Upson, J.
This is a petition in quo warranto to determine the right of The Cleveland Gas Light & Coke Company to charge the citizens of Cleveland the sum of $1.25 per 1,000 cubic feet of gas, in violation of the provisions of an ordinance of the city council fixing the price of gas to be charged by that company at $1.00 per 1,000 cubic feet. The question now to be determined by the court arises upon a demurrer to the second defense which is made by the defendant.
The petition sets forth the charter of the company, the ordi- ■ nance of the city fixing the price of gas, and alleges that,-in ■ violation of the provisions of that ordinance, the company continues to charge at the rate of $1,25 per 1,000 cubic feet. The defendant, among other defenses, refers to the charter, and sets forth the original ordinance granting the right to the company to use the streets of the city, and imposing as a condition the requirement that the company shall not charge to exceed three dollars per thousand cubic feet for gas furnished to the city and to the citizens. The defendant, availing itself *252 of the rule that upon a demurrer to the answer the court will look at the petition to determine whether it states facts sufficient to constitute a cause of action, makes the preliminary objection to the validity of the ordinance that it relates only to two companies, and is therefore not valid; that it should have been a general ordinance applying to all gas companies. The section of the statutes under which the ordinance is passed is this:
“The council of any city or village in which gas companies or gaslight and coke companies are established, are hereby empowered to regulate, from time to time, the price which such gas or gaslight and coke companies may charge for gas, furnished by such companies to the citizens, public grounds and buildings, streets, lanes, alleys, avenues, wharves and landing places; and such gaslight or gaslight and coke companies shall, in no event, charge more for any gas furnished to such corporation or individuals than the price specified by ordinance of such council; and such council shall also have power to regulate and fix the price which such companies may charge for the rent of their meters.”
The ordinance provides : “ That the price of gas hereafter furnished by the Cleveland Gas Light & Coke Company and by the People’s Gas Light Company to the citizens of Cleveland, and to the city of Cleveland for its public grounds, buildings, streets, lanes, alleys, avenues, wharves and landings be, and the same is hereby regulated and fixed at the price of one dollar per one thousand cubic feet.”
It will be seen by an examination of this section of the ordinance that it literally complies with the provisions of the section of the statute which I have read. The statute provides that “ the council of any city * * * in which gas companies or gaslight and coke companies may be established, are hereby empowered to regulate, from time to time, the price which such gas or gaslight and coke companies may charge for gas.” The ordinance is within the strict letter of the provisions of the statute authorizing the city council to pass such ordinances; and it not appearing from the pleadings that there are other companies between whom and the companies mentioned in this ordinance any discrimination is made by the terms of the ordinance, the court is not called *253 upon to presume that there is a discrimination which appears neither upon the face of the pleadings nor upon the face of the ordinance. If it is true that there is any such discrimination as would render the provisions of this ordinance invalid, that discrimination should be shown by the answer, and not by asking the court, upon a demurrer, to presume there is a discrimination which is not shown by the record. But, in addition to that, there is this consideration r that the validity of an ordinance is to be determined, like the constitutionality of an act of the legislature, by its operation, and not by the mere form it may. be made to assume, as stated by Judge White in the opinion of the court in the case of The State ex rel. Attorney-General v. The Judges et al., 21 Ohio St. 1. It, therefore, in order to require the court to hold this ordinance invalid upon the face of it, would be necessary for the defendant to show that it does, as a matter of fact, make a discrimination, which it is not for the court to presume is made upon the face of it.
The principal question, however, which is presented by this demurrer, is whether the charter of the company, the original ordinance to which I have referred, granting the use of the streets and alleys of the city of Cleveland to the Cleveland Gas Light & Coke Company, and the acceptance of that ordinance by the Gas Company, constitute a contract, so that, by the exercise of this power of regulating the price of gas conferred upon the city council by the legislature, the legislature impairs the obligation of the contract which has been entered into.
The second defense, after referring to the charter of the company, sets forth the original ordinance granting the right to lay the gas pipes in the streets and alleys of the city, and provides, in section 3:
“That, in consideration of the privileges granted to the said B. Barker, G. Warren, and their associates, successors and assigns, they shall furnish to said city, if required, upon the said streets, lanes, alleys, and public grounds, in and through which the leading or main pipes may be laid for the purpose of supplying the citizens with gas, such quantity of gas as may be required by the city council for public lamps, at a *254 price not exceeding the prices paid either in Cincinnati, in this state, or in Buffalo, N. Y., the lamp-posts, meters, and lamps being furnished at the expense of the city ; and shall charge the inhabitants of said city not to exceed $3 per thous- and feet of gas.”
It is alleged in this defense that the company accepted this ordinance, and that they commenced and prosecuted the construction of the work and laid their pipes, and that they have ever since complied with all of the conditions imposed upon them by the terms of that ordinance; and they claim that this ordinance that they are now charged with violating, is in violation of section 10 of article 1 of the constitution of the United States, prohibiting any state from passing laws impairing the obligation of contracts, and of section 28 of article 2 of the constitution of Ohio, prohibiting the legislature of said state from passing laws to the like effect. It is claimed that the charter, the original ordinance passed by the council, and the acceptance of the ordinance by the Gas Company, and its compliance with the conditions of the ordinance, give it the perpetual right to charge any price for gas, not exceeding the sum named in the ordinance, $3 per 1,000 cubic feet of gas, without any right upon the part of the legislature, or of the council when authorized by the legislature, to regulate or fix the price of gas in any other manner than that. Now, the first question is whether this charter and ordinance, and the compliance with the terms of the ordinance, constitute a contract. The rule of law, as well established, is stated by Chief Justice Waite in the case of Stone v. The Farmers' Loan & Trust Company, in the 116th volume of the Reports of the United States Supreme Court, on page 325. I read part of the opinion *255 the deliberate purpose of the state to abandon it does not appear.’ This rule is elementary, and the cases in our reports where it has been considered and applied are numerous. Thus, in Providence Bank v. Billings, it was held that the incorporation of a bank without any special provision for taxation did not imply a contract on the part of a state not to tax it at all. In Charles River Bridge v. Warren Bridge, 11 Pet. 419, 548, the court said this rule of construction was not confined to the taxing power, and accordingly it held that the charter of a toll-bridge company did not implya contract not to allow the building of another bridge in the immediate vicinity which would materially interfere with its revenues.”
*254 “ This power of regulation is a power of government, continuing in its nature, and if it can be bargained away at all, it can only be by words of positive grant, or something which is in law equivalent. If there is reasonable doubt, it must be resolved in favor of the existence of the power. In the words of Chief Justice Marshall, in Providence Bank v. Billings: ‘Its abandonment ought not to be presumed in a case in which
*255 •' Now, it will be observed upon examining the charter of this company, that it gives the company the ordinary powers of a corporation,- and especially the right to manufacture and sell gas, but does not in any way attempt to fix a price at which gas may be sold by the company. It fixes no maxinum. It contains no provision and no stipulation, either express or implied, taking away the power of the legislature to provide for the future regulation of the price of gas to be furnished by the company* It is true that the legislature has the general legislative power of the state, and it is true that in many cases it may impose restrictions and limitations upon future power of legislation. To what extent that may be done is frequently a very serious question, and whether it might be done in this case or not — whether the legislature had power to impose any limitation upon the power of future legislatures to regulate and fix the price of gas to be furnished by gas companies in the state — is a matter of serious doubt in my mind. But, at all events, so far as this charter is concerned, there has been no attempt to make a contract with the company as to its future rights in that respect.
And now as to the city, what is the state of the case ? In the first place, the charter of the company gave to the corporation the right to use the streets of the city for the purpose of carrying on its business, but provided that before diggingor commencing operations “ the said corporation hereby created shall first give notice to, and obtain consent of the city council of said *256 city for that purpose.” Now, that, so far as appears to us, is the only authority given at that time to the city council to make any contract with this company whatever. The power was conferred upon the city to consent to the use of its streets and alleys for the purpose of laying pipes to supply the citizens of the city and the public grounds of the city with gas ; and of course, when its consent was asked for that purpose, it might impose reasonable conditions precedent to the exercise of that power. But that the city council would have the right, aside from express power conferred by the legislature, to bind the city council for all time to permit the gas company to charge at any particular rate for its gas, or to bind the city council not to exercise the power conferred upon it by the legislature to regulate and fix the price of gas, it seems to us, is a proposition which cannot be maintained for a moment. It is exercising a power which could be exercised only by the legislature itself, or by its express authority, if it be exercised in any case; and, as I have said before, it seems to us a question admitting of very serious doubt, to say the least of it, whether the legislature itself has a right to impose such limitations upon the future legislatures of the state. But, aside from that consideration, it seems to us perfectly clear, in looking at the terms of this original ordinance, that there was no attempt upon the part of the city council to make a contract with this company that the price of gas should not be changed. And for that purpose it seems to us that it is only necessary to look to the terms of that section of the ordinance which is regarded as making a contract in that respect.
“That in consideration of the privileges granted to said B. Barker, G. Warren, and their associates, successors, and assigns,, they shall furnish to said city, if required, upon the said streets, lanes, alleys and public grounds, in and through which the leading or main pipes may be laid for the purpose of supplying the citizens with gas, such quantity of gas as may be required by the city council for public lamps, at a price not exceeding the prices paid either in Cincinnati, in this state, or in Buffalo, N. Y., the lamp-posts, meters, and lamps being furnished at the expense of the city; and shall charge the inhabitants of said city, not to exceed $8 per thousand feet of gas.”
*257 It seems to us that it would be giving a very liberal construction to that section to say that it provided not only that they should not charge more, but that they should perpetually have the privilege of charging as much as S3 per thous- and feet. It is a condition imposed upon the company that it shall not charge more than that sum per thousand cubic feet of gas in consideration of the privileges granted by the city, but not a stipulation on the part of the city that it will never excercise the power conferred upon it by statute to regulate and fix the price of gas in such a manner as to establish a lower price of gas than that named in the ordinance.
We think, upon every consideration, both with reference to the charter of the company and to this ordinance, and every consideration of public policy, that this ought not to and cannot be held to be a contract, the obligation of which is impaired by the ordinance ■ passed by the city council in January, 1887, which the company is charged with violating. The demurrer to the second defense is, therefore, sustained.